IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NAM VAN PHAN, | : |
|     Petitioner | : |
|     v. | : Case No. 3:25-cv-348-KAP |
| LEONARD ODDO, WARDEN, | : |
| MOSHANNON VALLEY PROCESSING | : |
| CENTER, *et al.*, | : |
|     Respondents | : |

Memorandum Order

    This is a consent case presenting a habeas petition by a noncitizen permanent resident with a final order of removal who was living in the community subject to an Order of Supervision. Petitioner had the OSUP revoked and is now detained pending further removal proceedings, including execution of the order of removal to his country of origin. Petitioner challenges his detention and the manner by which it was accomplished. Due to the number of similar cases arising from the detention of individuals at the Moshannon Valley Processing Center located in this division of the Western District, there is developing precedent that can be looked to for guidance. *See e.g.* Roe v. Oddo, No. 3:25-cv-128, 2025 WL 3030692, at *2–3 (W.D. Pa. Oct. 30, 2025), *interlocutory appeal docketed*, No. 25-3588 (3d Cir.).

    According to the record, petitioner was born in Vietnam in 1981, was admitted to the United States as a refugee at age 10 in 1991, and became a lawful permanent resident in 1993. In 2001, petitioner pleaded guilty to robbery, aggravated assault, and other criminal charges and was sentenced by the Bucks County Court of Common Pleas to 7-14 years imprisonment. When he was paroled in 2008, petitioner was taken into ICE custody for removal proceedings and was ordered removed by an Immigration Judge. There is a final order of removal.

    Petitioner's removal was not accomplished in 2008 or thereafter, and according to petitioner's counsel on information and belief that was because of the state of diplomatic relations between the United States and Vietnam at the time. The parties disagree on whether current diplomatic relations between the United States and Vietnam permit execution of removal orders to Vietnam. In 2009, petitioner was released on an OSUP that called for him to report regularly to an ICE office. Petitioner subsequently had another criminal conviction in 2016 that resulted in a sentence of probation from the Philadelphia Court of Common Pleas (and what the exhibits to the response indicate may also have resulted in a probation violation sentence on May 24, 2017 from the Bucks County Court of Common Pleas), but that probation ended in 2023 and petitioner was in

the community subject only to the OSUP until September 16, 2025, when he was arrested at his scheduled appointment at an ICE office and subsequently detained at Moshannon Valley.

Petitioner challenges his detention with a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C.§ 2241 filed in October 2025 at ECF no. 1. The respondent's Response is at ECF no. 7.

Petitioner makes two claims: 1) that when ICE revoked the OSUP and arrested him in September 2025 without notice and an opportunity to be heard, it violated the Immigration and Nationality Act and ICE's regulations at 8 C.F.R.§ 241.13(i)(2) implementing the Act, the Administrative Procedure Act, and the Fifth Amendment's guarantee of due process; and 2) that his continued detention is unlawful because his removal to Vietnam is not foreseeable within a reasonable period of time. *See* Zadvydas v. Davis, 533 U.S. 678 (2001).

The respondent contends that this court has no jurisdiction to consider the legality of the circumstance surrounding petitioner's arrest and the revocation of the OSUP because this matter is squarely within the holding in Tazu v. Attorney General United States, 975 F.3d 292, 298 (3d Cir. 2020), wherein the Court of Appeals stated:

> Tazu also challenges the Government's re-detaining him for prompt removal. The Government, he notes, ended his supervision period without first giving him notice and a revocation interview. By doing so, he argues, it violated the agency's rules and thus due process. *See* 8 C.F.R. § 241.4(*l*)(1). While **this claim** does not challenge the Attorney General's *decision* to execute his removal order, it **does attack the *action* taken to execute that order. So under § 1252(g) and (b)(9), the District Court lacked jurisdiction to review it**.

I conclude that Tazu governs the first claim in this matter. I add that it also makes sense in light of general habeas law. Because the writ addresses detention *simpliciter* and the legality of custody is not defeated by irregularities in the means by which custody is obtained (the Ker-Frisbie doctrine discussed in United States v. Alvarez-Machain, 504 U.S. 655 (1992) illustrates the principle) the remedy for a due process or other violation in petitioner's arrest would be provided by a judgment on a civil complaint seeking either damages or the allegedly required hearing, not by a writ. Stated another way, it is not the case that petitioner has no remedy if his arrest was illegal, only that his potential remedies do not include a writ from a district court. *See* Roe v. Oddo, *supra*.

That leaves the attack on continued detention itself, in other words the Zadvydas v. Davis claim. It is not jurisdictionally barred because it does not ask for review of an order of removal and does not challenge the decision to detain petitioner in the first place or the removal process itself. Jennings v. Rodriguez, 583 U.S. 281, 294 (2018).

The Zadvydas v. Davis claim, however, is premature. Any detention is galling but the petitioner has not been in custody long enough to reach that case's six-month threshold for considering the claim that petitioner's detention is excessive because there is no reasonable likelihood of removal.

Also, the claim would not succeed even of more than six months had passed. As I noted above counsel disagree on the likelihood of removal, but the 2020 Memorandum of Understanding attached to the Response at Exhibit 3 is *prima facie* evidence that removals of persons like petitioner are at least legally possible. It is an understatement to say that diplomatic relations between countries change on a daily basis, so whether the MOU is a dead letter or likely to be enforced in petitioner's case depends on facts that are not and cannot be of record yet. That is no doubt one reason for the six-month threshold given in Zadvydas v. Davis. There is no legal or practical reason to consider whether removal is reasonably likely in petitioner's case until enough time has passed that the government has had an opportunity to seek the necessary travel documents. And under Zadvydas v. Davis, the petitioner is required to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" before the respondent must "respond with evidence sufficient to rebut that showing." Id., 533 U.S. at 701. As it stands the petition alleges but fails to provide any good reason to believe that there is no significant likelihood of removal in reasonably foreseeable future, and unlike civil complaints considered under Rule 12(b)(6), an allegation in a habeas petition is not entitled to a presumption of truth.

Accordingly, the petition is denied. This is a final appealable order.

DATE: January 7, 2026

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record